UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

LOUIS H. ERWIN, JR.,              )
                                  )
    Plaintiff,               )
                                  )     Case No. 1-07-CV-67
v.                                )
                                  )     Judge William B. Mitchell Carter
CHRISTOPHER L. PISCITELLO,        )
                                  )
    Defendant.               )

## MEMORANDUM

According to the complaint (Doc. No. 1-2), the defendant placed an ad on eBay, representing that a classic car he had for sale was in mint condition. The plaintiff relied on this representation and purchased the vehicle, only to discover its condition was far from mint. This lawsuit ensued. On April 3, 2007, defendant Christopher L. Piscitello ("Defendant") filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 2). Plaintiff Louis H. Erwin, Jr. ("Plaintiff") responded (Doc. No. 6). Defendant replied (Doc. No. 10) to Plaintiff's response.

After considering the parties' arguments and exhibits, this Court finds its exercise of personal jurisdiction over Defendant to be proper. Thus, as explained below, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 2) will be **DENIED**.

### I. FACTS & PROCEDURAL HISTORY

Plaintiff is a citizen and resident of Tennessee (Doc. No. 1-2, ¶ 1). Plaintiff collects, buys, and resells "classic" automobiles, that is, automobiles manufactured in the 1950s and 1960s (*id*. ¶ 5). Defendant is a citizen and resident of Texas (*id*. ¶ 2).

In November 2006, Plaintiff saw an eBay ad for a 1962 Chevrolet Impala convertible (the "Impala") (*id*. ¶ 5). Plaintiff emailed an inquiry and Defendant responded. They made and received several calls during the month of November (*id*. ¶¶ 6-7). During these calls, Defendant represented to Plaintiff that the Impala was in "great" or "mint" condition, restored, rust-free, with many original parts, and well-worth its $ 50,000 price tag (*id*. ¶ 7). Plaintiff expressed interest in buying the Impala as Defendant described it, and the parties made tentative plans for Plaintiff to travel to Texas to view the car (*id*. ¶ 8). This was not to be, however, as Plaintiff's father-in-law passed away (*id*. ¶ 9). The parties differ as to whom next initiated contact;[1] according to the complaint, Defendant called and asked when Plaintiff could come to Texas and Plaintiff suggested Defendant look for another buyer (*id*. ¶¶ 9-10). Defendant reiterated the Impala's quality and offered to send "his driver" to Tennessee to deliver the car. Plaintiff agreed and cut Defendant a check (*id*. ¶¶ 10-11). After the check cleared, according to Plaintiff, Defendant sent his driver and car hauler to Chattanooga. The driver became lost, arriving late, and Plaintiff accepted delivery of the Impala on December 2, 2006 (*id*. ¶ 10). Two days later Plaintiff inspected the car and discovered it was not in mint condition but was rusty, with many non-original parts, and was not nearly worth the purchase price (*id*. ¶ 12). Plaintiff contacted Defendant and requested rescission of the sale. Defendant suggested Plaintiff sell the Impala at an upcoming auction in Florida, and he would pay Plaintiff the difference between the proceeds and the purchase/contract price (*id*. ¶ 16). Defendant allegedly refused to honor this agreement (*id*.), and it appears Plaintiff still has control of the Impala. It should be noted, there is no written contract for

---

[1] The complaint avers that Defendant contacted Plaintiff (Doc. No. 1-2, ¶ 9). Defendant tentatively admits he contacted Plaintiff "after the parties had not contacted each other for several days" (Doc. No. 3, p. 5). However, in his affidavit, Plaintiff states that *he* contacted Defendant on November 22, 2006, to inform Defendant he would not come to Texas because of the death in his family (Doc. No. 6-2, ¶ 7).

2

the transaction but only an uncompleted Bill of Sale and an "open" title (*id.* ¶ 18).

Plaintiff sued Defendant in the Circuit Court of Hamilton County, alleging breach of contract, breach of express warranty, fraud and fraud in the inducement of a contract, intentional and negligent misrepresentation, and violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* (*id.* ¶ 18 [*sic*, ¶ 19])). Plaintiff requested rescission of the sale, return of his $ 50,000 purchase money plus expenses and interest, or, in the alternative, $ 30,000 in damages plus transport expenses (*id.* at p. 6). Plaintiff also requested $ 500,000 in punitive damages (*id.* at p. 7) or treble damages under the TCPA. Plaintiff alleged jurisdiction under the Tennessee "Long Arm" statute, Tenn. Code Ann. § 20-2-214 (*id.* ¶ 4).

Defendant removed the matter to this Court on April 3, 2007, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 (Doc. No. 1, p. 1-2). Defendant filed the Motion to Dismiss coincident with the removal. A scheduling conference was held on July 9, 2007, and the parties consented to the undersigned United States Magistrate Judge handling this case.

II. **STANDARD OF REVIEW**

Plaintiff bears the burden of demonstrating personal jurisdiction exists over Defendant. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court may hold an evidentiary hearing or the Court may evaluate the parties' affidavits. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). If the Court chooses not to hold a hearing, Plaintiff need only make a prima facie case for jurisdiction. In other words, Plaintiff must "demonstrate facts which support a finding of jurisdiction," *id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)), and must demonstrate jurisdiction co-

terminous with Tennessee's Long Arm statute, *id*. Plaintiff's burden is relatively slight. *Welsh*, 631 F.2d at 438; *Neogen*, 282 F.3d at 887 (to avoid dismissal under Fed. R. Civ. P. 12(b)(2), plaintiff need only make prima facie showing of jurisdiction by establishing, with reasonable particularity, sufficient contacts between defendant and the forum State). This Court must view the pleadings and affidavits in the light most favorable to Plaintiff and must not consider facts proffered by Defendant which conflict with facts proffered by Plaintiff. *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)); *Welsh*, 631 F.2d at 439.

### III. DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss this matter for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. No. 3, p. 1). Defendant emphasizes that he is a Texas resident and conducted no business in Tennessee related to this sale (*id*. ¶¶ 2-3) (Aff. of Christopher Piscitello). Defendant disputes Plaintiff's version of the facts – he claims Plaintiff requested the Impala's sale and arranged its transport on his own, although Defendant recommended an "independent hauler" in response to Plaintiff's inquiry (*id*. ¶¶ 9, 11-13). Defendant attached a copy of his eBay posting, which reads as follows:

> Pickup & Shipping
> Buyer is responsible for vehicle pickup or shipping. Vehicle shipping quote is available.
>
> Seller's payment instructions
> . . . BUYER TO PAY SHIPPING COSTS FROM CLEBURNE TEXAS 7603. WILL WORK WITH BUYER ANY WAY POSSIBLE FOR SMOOTH TRANSACTION.

(*id*., eBay Posting, p. 5-6). Defendant also attached the affidavit of Curtis Marlett ("Marlett"), an "independent" vehicle hauler, who avers he is not/was not employed by Defendant or Defendant's

4

company but had previously independently transported vehicles for Defendant (*id*. at p. 10) (Aff. of Curtis Marlett). Marlett states that Plaintiff called him, they agreed on a fee, and he delivered the Impala to Plaintiff (*id*. at p. 11). Further, Plaintiff "looked at the condition of the vehicle" and paid the agreed fee plus a gratuity (*id*.). Marlett claims he received neither payment nor direction from Defendant.[2]

IV. **DISCUSSION**

   A. **PERSONAL JURISDICTION**

The Court may only exercise personal jurisdiction over Defendant if such jurisdiction (1) is authorized by the Tennessee Long-Arm statute and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the federal Constitution. *Youn*, 423 F.3d at 417 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)); *Neogen*, 282 F.3d at 888. The Tennessee Long Arm statute reads in pertinent part:

> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) The transaction of any business within the state; (2) Any tortious act or omission within this state . . . (5) Entering into a contract for services to be rendered or for materials to be furnished in this state; (6) Any basis not inconsistent with the constitution of this state or of the United States . . .

---

[2] As stated above, Plaintiff's recollection in the complaint (and as supported by his affidavit, Doc. No. 6-2) differs from Defendant's. According to Plaintiff, Defendant repeatedly initiated lengthy calls to Plaintiff (*id*. ¶¶ 5-11). Defendant offered to have "his man" deliver the Impala to Tennessee, Plaintiff paid only for gasoline, and the delivery truck bore the name/logo of Defendant's company (*id*. ¶ 12-15). "All indications to the Plaintiff were that the driver, Curtis Marlett, who delivered the vehicle was an employee and/or agent of the Defendant." (Doc. No. 6, p. 8). Again, the Court construes the complaint in the light most favorable to Plaintiff and accepts Plaintiff's side of the story if it differs from Defendant's.

5

Tenn. Code Ann. § 20-2-214. As the statute clearly declares, it extends personal jurisdiction to the full limit allowed by due process. *Bridgeport Music*, 327 F.3d at 477 ("[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process"); *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993).

The bedrock principle of a due process/personal jurisdiction analysis is that a non-resident defendant must have sufficient "minimum contacts" with the forum state so that the exercise of that state's jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If a defendant's conduct is such that he can "reasonably anticipate being haled into court" in the forum State, minimum contacts exist. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001). Minimum contacts may be demonstrated by the defendant's "purposeful availment" of the privilege of conducting business within the forum State. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). The minimum contacts requirement is satisfied if the defendant purposefully directs his activities at residents of the forum state and the cause of action arises from alleged injuries that arise from/relate to those activities. *Id*. at 472; *Neal*, 270 F.3d at 331. In Tennessee, even a defendant's single act, if it is deliberately directed toward a State resident and gives rise to cause of action, can support a finding of purposeful availment and therefore meet the due process requirement of "minimum contacts." *Neal*, 270 F.3d at 331.[3]

---

[3] *See also Payne v. Motorists' Mut. Ins. Co.*, 4 F.3d 452, 455 (6th Cir. 1993) ("The so-called 'outer limits of *in personam* jurisdiction based on a single act' are as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of

B.     APPLICATION

Defendant argues he has failed to "purposely avail" himself of the forum State of Tennessee, because he sold the Impala in Texas, Plaintiff arranged for transport – all Defendant did was respond to Plaintiff's telephone calls (Doc. No. 3, p. 4-5). Defendant argues it would be unreasonable to hale him into Tennessee court; moreover, Defendant tries to couch Plaintiff's complaint as grounded in *delivery* of the Impala in-state. However, Plaintiff's complaint alleges causes of action for breach of contract and misrepresentation. Thus, this case is controlled by *Neal v. Janssen*, in which the United States Court of Appeals for the Sixth Circuit held that acts of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee, were directed at individuals in the State, and were at "the heart of the lawsuit." Thus, purposeful availment, forming the basis of per-sonal jurisdiction, existed. 270 F.3d at 332-33.

In *Neal*, Tennessee residents sued a Belgian citizen for fraud and breach of fiduciary duty. The plaintiffs were trying to sell a horse which was boarded in Holland. The defendant agreed to serve as their agent, and the parties met in Florida and sent multiple faxes back-and-forth to arrange the transaction's details. *Id*. at 330. After the horse was sold the plaintiffs learned the defendant had made far more money than he sent to them. *Id*. They sued in federal court in the Middle District of Tennessee. The defendant filed a motion to dismiss for lack of personal jurisdiction. *Id*. at 331.

The Sixth Circuit noted that Tennessee allows a court to exercise jurisdiction "if a tortious

---

action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reason-able.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

7

act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee.'" *Id*. at 331 (citing Tenn. Code Ann. § 20-2-214(a)). The court reaffirmed that a single act can support finding minimum contacts. *Id*. The court restated the Sixth Circuit's three-part test for determining the propriety of personal jurisdiction: (1) the defendant personally availed himself of the privilege of acting in Tennessee or caused a consequence in the state; (2) the plaintiff's claims must arise from defendant's activities in-state; and (3) the defendant's acts or the consequences of such acts must have a substantial-enough connection with Tennessee to make Tennessee's exercise of jurisdiction over the defendant reasonable. *Id*. at 332 (citing *Reynolds*, 23 F.3d at 1116); *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Applying this test, the court found the defendant's phone calls – whose purpose was to confer fraudulent information and perpetrate the allegedly fraudulent acts – were sufficient to form the basis of personal jurisdiction since they formed the bases for the cause of action. *Id*. (collecting cases). The court clearly stated "[i]t is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Id*. at 332-33 (ultimately finding the defendant's allegedly fraudulent acts had foreseeable effects in Tennessee, were directed at individuals in Tennessee, and formed the elements of the plaintiffs' cause of action; contrasting the facts with other cases in which fraudulent conduct was incidental to another cause of action).

Again, this Court must accept Plaintiff's version of the facts when and if it runs counter to Defendant's version. *Neogen*, 282 F.3d at 887. Accordingly, the Court finds Defendant purposely availed himself of the privilege of conducting business in Tennessee and/or caused a consequence in Tennessee. Defendant knowingly interacted with a Tennessee resident, he "hard-sold" the Impala to Plaintiff (by convincing Plaintiff the vehicle was in mint condition and by arranging the vehicle's

8

transport to Tennessee), and he misrepresented the Impala's mint condition. Plaintiff's breach of contract claim arises, not from the Impala's delivery (as Defendant argues), but from Defendant's act of cashing Plaintiff's check, despite the vehicle's failure to satisfy the picture Defendant painted of it in the negotiations leading to the sale. *Accord SSM Indus. v. Fairchild Apparel Group, Inc.*, 2004 WL 1109547 (E.D. Tenn. Jan. 16, 2004) (defendant argued breach of contract was caused by plaintiff's delivery of allegedly defective fabric to defendant's California location; court rejected this argument and found it was the nature of parties' relationship which rendered a lawsuit in Tennessee reasonable – there were several telephone negotiations, defendant accepted delivery from Tennessee and deliberately entered into a contract with a party it knew was not located in its home state but who had the materials defendant needed); *Nicholstone Book Bindery, Inc. v. Chelsea House Publ'ers*, 621 S.W.2d 560, 566 (Tenn. 1981) (because defendant chose to enter into mutually beneficial business relationship with Tennessee resident, the relationship began when a purchase order was sent from the New York-based defendant to plaintiff, and the contract provided for a specialized product, it was reasonably foreseeable the transaction would cause economic consequences in Tennessee and personal jurisdiction could be properly asserted).[4] Even in the event Plaintiff's breach of contract claim depends on the Impala's delivery, according to Plaintiff, *Defendant* coordinated delivery and even sent the vehicle in a truck bearing his company's name. Thus, Defendant's argument Plaintiff's claim should be precluded based on Plaintiff arranging delivery of the Impala has no merit.

Further, Plaintiff's misrepresentation and fraud claims stem from Defendant's acts of calling

---

[4] Importantly, "the dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately 'chose to deal' with the plaintiff." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 796 (6th Cir. 1996) (citing *S. Mach.*, 401 F.2d at 382).

into Tennessee and representing the Impala was something it was not. This case is similar to *Neal*, as Defendant's allegedly fraudulent conduct is necessary to establish the elements of Plaintiff's cause of action.[5] This case, like *Neal*, involves a defendant who never entered Tennessee; nonetheless, his knowing and intentional conduct caused foreseeable ill effects in-state. Finally, Defendant knew he was dealing with a Tennessee resident. Thus, it was reasonably foreseeable for Defendant to be haled into court in Tennessee when the transaction soured. *Accord McGuire v. Lavoie*, No. 3:03-CV-0161-BH, 2003 WL 23174753, *5-6 (N.D. Tex. Aug. 19, 2003) (defendant had control over the identity of the buyer of tractors he listed on eBay since he chose to stop the online auction and sell the tractors directly to plaintiff, a Texas resident; defendant allegedly defrauded plaintiff by means of misrepresentations related to the tractors and thus defendant "by entering into a series of sales agreements with a Texas resident and by misrepresenting material facts and making false statements in communications to that resident, should reasonably have anticipated causing injury to a Texas resident and being haled into court in Texas" and personal jurisdiction was fair and proper).[6]

---

[5] The elements of a fraud claim in Tennessee are: (1) intentional misrepresentation(s) with regard to material fact(s); (2) defendant's knowledge of the representation's falsity; (3) plaintiff's reasonable reliance on the misrepresentation(s), resulting in damages to plaintiff; and (4) the mis-representation(s) relates to an existing or past fact. *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank, N.A.*, 835 S.W.2d 25, 29 (Tenn. Ct. App.1992).

The elements of negligent misrepresentation in Tennessee are: (1) defendant was acting in the course of his business; (2) defendant supplied faulty information meant to guide others in their business transactions; (3) defendant failed to exercise reasonable care in obtaining or communicating this information; and (4) plaintiff justifiably relied on this information. *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).

[6] *Accord Mark Hanby Ministries, Inc. v. Lubet*, No. 1:06-CV-114, 2007 WL 1004169,*11 (E.D. Tenn. Mar. 30, 2007) (personal jurisdiction over defendant proper because she sent defamatory e-mails directed at a Tennessee resident and these emails were "the heart of the action"); *SSM Indus.*, 2007 WL 1109547 at *6 ("defendants' contacts with Tennessee and their contractual relationship with SSM in Tennessee can in no sense be viewed as random, fortuitous, or attenuated . . . [defend-ants] deliberately reached out beyond California . . . for the express

The Court also notes, if the first two elements of the Sixth Circuit's personal jurisdiction test are met, "only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). The Court may balance four factors to determine whether the exercise of personal jurisdiction over Defendant is fair and reasonable: (1) the burden on Defendant, (2) Tennessee's interest in the litigation, (3) Plaintiff's interest in obtaining relief, and (4) a national interest in securing an efficient resolution of this dispute. *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California*, 480 U.S. 102, 113 (1987). Defendant argues Tennessee has no interest in resolving this dispute because the Impala was sold and the transaction was completed in Texas (Doc. No. 3, p. 8). Defendant also seems to read the complaint as asserting jurisdiction over Defendant anywhere Plaintiff was located (despite his state residency) at the time he inquired about the Impala (*id*. at 7-8).

First, as to the burden on Defendant, "[m]odern transportation and communications make it much less burdensome today for nonresident defendants to litigate and defend themselves in

---

purpose of creating a contract with SSM for customized products to be manufactured in Tennessee").

 *Cf. Action Tapes, Inc. v. Weaver*, No. 3:05-CV-1693-H, 2005 WL 3199706, *3 (N.D. Tex. Nov. 23, 2005) ("Courts that have looked at the question of personal jurisdiction based on eBay transactions have uniformly held that the usual online auction process does not rise to the level of purposeful conduct required to assert specific jurisdiction."). *Action Tapes* cites *McGuire v. Lavoie*, 2003 WL 23174753 at *5, as a "cf" case, because the court found personal jurisdiction to exist as the seller stopped the eBay auction before its conclusion and entered into a direct, repeated, and "traditional" sales relationship with the buyer. This case is not a "typical" eBay transaction in which the buyer and seller had no contact, but is much more akin to *McGuire*, in which the parties took the transaction "offline." *See also Boschetto v. Hansing*, No. C-06-1390, 2006 WL 1980383, *4 (N.D. Cal. July 13, 2006) ("an overwhelming majority of courts have held that an eBay seller does not purposefully avail himself of the privilege of doing business in a forum state *absent some additional conduct directed at the forum state*") (emphasis added).

Tennessee where the defendants have purposefully engaged in business or economic activity in Tennessee." *SSM Indus.*, 2007 WL 1109547 at *11. Second, the United States Supreme Court has recognized the legitimate interest of states such as Tennessee in offering its citizens a convenient judicial forum to obtain redress for injuries caused by non-residents. *Burger King*, 471 U.S. at 473; *S. Mach. Co.*, 401 F.2d at 385 ("when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted"). Third, according to Plaintiff's complaint, he initially tried to recover out-of-court from Defendant, but was forced to sue because Defendant reneged on the make-whole deal (Doc. No. 1-2, ¶ 16). It is clear Plaintiff is serious about, and has a serious interest in, recovering monies paid Defendant for a vehicle which did not live up to Defendant's representations or the contract's intent.

Finally, Defendant argues Texas is a more appropriate forum, because the Impala was "sold" in Texas (in other words, Defendant cashed Plaintiff's check – written in Tennessee – in Texas and the Impala was shipped from Texas to Tennessee). The Court has already rejected Defendant's argument as to the import of the Impala's delivery. Defendant argues, "Texas law would apply to the purchase of the vehicle within its borders," but this Court points out, many other courts find it fair to defendants and to the interstate judicial system to allow for broader personal jurisdiction when defendants make use of the Internet in transacting their business. In *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813 (E.D. Mich. 2006), our sister court noted:

> [T]he Court would be remiss if it did not recognize the changing nature of the world marketplace and business relationships arising out of commercial use of the internet . . . . To apply outmoded or overly constrained notions of legal analysis to relation- ships formed through the internet is to turn a blind eye to the nature of the internet itself and its use by those engaging in commerce. Internet forums such as eBay expand the seller's market literally to the world and sellers know that, and avail themselves of the benefits of this greatly expanded marketplace. It should, in the

context of these commercial relationships, be no great surprise to sellers – and certainly no unfair burden to them – if, when a commercial transaction formed over and through the internet does not meet a buyer's expectations, they might be called upon to respond in a legal forum in the buyer's home state. Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.

*Id*. at 819-20. Thus, the Court finds the exercise of jurisdiction over Defendant under these facts comports with Due Process and is authorized by the State of Tennessee's Long Arm Statute.

## V. CONCLUSION

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 2) will be **DENIED**. An order will enter.

s/William B. Mitchell Carter

UNITED STATES MAGISTRATE JUDGE